Hold on, next case, 16-50847, Vine v. PLS Financial Services, Appellant ready to proceed. Yes, sir. You may. Good morning, Your Honors. Mark Osborne for Appellants. Yes, sir. Before you start, I'd like to explore a little bit what the record evidence is as far as our being able to judge this case. Of course, you filed a motion to dismiss, claiming it should be arbitrated. Yes, sir. And the basis for your motion to dismiss was 12B-6? Yes. Right. And what, if any, evidence do we have in the record other than just the operative complaint? The reason being, they offer one very, very negative side of the case against PLS, and you in your brief talk about, no, we didn't do this, or no, we didn't do that. And that confuses me because generally we're limited to the allegations in the complaint, and I think that's what the district judge felt found by. Yes, I think that's generally correct. I guess what I would say is if you actually look at what they say in their complaint, most of the allegations are not about PLS. They're about the industry in general or other companies. Right. In your brief, for example, you say, no, we didn't do that. Right. Now, what's the basis for you being able to do that, to say, no, we didn't? The basis is that there's no evidence in the complaint. Let me finish. I'm sorry. Yes, sir. No, we didn't file a bad check claim with the district attorney. No, we did do that. I'm not denying that. Okay. Well, then I got confused because I was seeing two very different operative scenarios. So you're content to just stick to the complaint? We'll stick to the complaint. I'll tell you where we do have problems are where the complaint actually makes allegations and cites sources that clearly show the allegations are not true. In that case, I don't think the court is required. I don't think the district court is required to accept the allegations as true. How would we know whether they're true or not? Just to give you a very simple example, if I were to file a complaint that said that this claim involves the 52nd state of the United States, Israel, we would all know that statement is false. Right. And the court is not required to accept that. In this case, just as an example, I'll point out an example. I don't think it's relevant to anything that's going on here. But as an example, the appellees say that we have a policy of we tell people that the reason for taking these post-dated checks is simply to be able to verify whether they have an account. They cite to a website as evidence of that. If you go to the website, it says nothing at all about that whatsoever. Is the website cited in the complaint? Yes. And so in that instance, I would say the court can say. Well, that's like attaching a document to the complaint. Yes. All right, my second question is this. This is a diversity action. State law applies. But in the contracts, the parties agree that the Federal Arbitration Act will apply. So how do we apply the Federal Arbitration Act, federal law, vis-a-vis state law in a diversity action? Because Texas has its own Arbitration Act, but that's not what's applicable here. Right. It's a common situation. If the Federal Arbitration Act applies, you apply federal law. And then only within the context of the FAA, it will specifically say in some instances you look to state law to determine some issues. And two examples of that would be one which is relevant here. One would be the formation of a contract. In other words, you're looking at the arbitration agreement and one initial decision the court has to make, was there a contract formed? You look at state law to decide that, not federal common law. Was a contract formed? A second example, though, which is relevant here is on issues after you get through the first two initial questions, which are is there a contract and are the claims within the scope of that contract, questions after that about arbitration go under state law. And the perfect example is here, waiver in a diversity action. Well, actually, this is true even if it's under the FAA. Even if you're in federal court not under diversity, but you were looking at the Federal Arbitration Act, questions like waiver are actually decided based on state law. That's what the U.S. Supreme Court teaches. So you would, on those kind of claims, you look to state law. Well, the reason it's hardly ever relevant is because Texas law in general on waiver and the Fifth Circuit law on waiver in general is exactly the same. There's really not a difference. The place, let me just jump to this issue right now, the one place where it is relevant here, is because you have the Cash-Biz v. Henry decision by the San Antonio Court of Appeals, a Texas intermediate court decision, that is actually squarely on point with this case. Roberts. You say that that converges with subway equipment. It does. What happens, subway equipment obviously is a more general. On Cash-Biz, which I agree has much closer facts. Yes. We had the decision in June of 2016 below. Yes. Then you have a motion to reconsider. Right in there, Cash-Biz comes down. I didn't see that it was ever submitted to the district court. It was. It was? What happened was, and it's in the record. Yes. Page site. No, I'm sure if you say it wasn't. What happened was, I believe it was after all of the briefing, but before the court issued its order, we submitted just a one-page filing telling the court. I didn't see that. There is this authority, and the court actually, in its order on the motion to reconsider, discusses Cash-Biz. Yes. I see that. We brought that to the court. May I ask a threshold relief question, too? Yes. If you were to prevail, are you saying that as a threshold point you would prevail, we wouldn't even reach waiver because your view of this contract is that you agreed to arbitrate arbitrability, and therefore the waiver question would go to the arbitrator if you win on your first point? Is that right or wrong? You know what? I'm going to leave that to you, and I'm going to tell you why. I was surprised by this law. In all my experience handling arbitration matters in front of courts, my experience has always been that waiver is decided by the courts. That's what I would have thought. That is exactly what I would have thought. But in doing the research in this case, we came across the, I believe, let me give you the exact name. It's the BG Group v. Republic of Argentina case, the 2014 Supreme Court case. What that case appears to say, to teach, is that the issue of waiver is decided by the agreement, and two things can happen in the agreements. Three things could happen. One is the parties could specifically say we want waiver decided by the arbitrator. One is you could specifically say we want waiver decided by the courts. But waiver, that usually contemplates contractual waiver as distinct from waiver by virtue of litigation, wouldn't you say? No, I wouldn't agree with that, Your Honor. Okay. You just have to read the language of the contract and see what is meant. And then the third, the middle ground would be we don't say anything about it at all. I don't think anything was said about waiver specifically here. Well, I'm going to differ with you slightly on that. Okay. There are two different arbitration agreements. The one for Mrs. Pons specifically has a provision that says any efforts to set aside the arbitration agreement should be decided by the arbitrator. We interpret that as including waiver. If that's true, then you have a specific intent. I understand that reasoning. I don't see a case that says — No, I mean, you have to interpret the contract. This is just like contract construction law. So what's your position on this special question? Yes. Our position is setting aside would include waiver. So then we wouldn't — even if you've got a dead-bang winner under subway equipment and under cash biz and we don't — I'm surprised by that. Frankly, I would rather have you decide it. But I think the law the Supreme Court is teaching, this should go back to the arbitrator in that instance. Let me finish the one last point, though, because in Ms. Vine's agreement, you don't have that same language. So you have an absence of language. If you were to decide that set aside does not include waiver, then you would have the same thing as in Ms. Vine's, which is no comment on no specific intent of the parties. And the Supreme Court has said then the presumption is the parties intended the arbitrator to decide it. So in either case, in both of these instances, if we're going to follow that Supreme Court case, and the Fifth Circuit, to my knowledge, has never looked at this issue since 2014, I think that the law is that you should send it back for the waiver to be cited by the arbitrator. That's a surprise to me. It's — as a practicing lawyer, it's not what I would have thought or expected. But we brought that to the trial court's attention in the motion to reconsider and bring it now. That's my only — Yes. Why isn't the waiver waived? Because you failed until the motion to reconsider to bring up this new point. That's generally too late. It truly — Normally, a motion to reconsider concerns new evidence or something of that type. Well, there are actually two reasons. One is, in particular, because the trial court decided it would consider it, and it did rule on it in the motion to reconsider, so I think it's properly before you. But secondly, I do think it falls — you know, in interlocutory orders, there really isn't a rule on motions to reconsider. But courts of appeals have said we're going to look at it as if it's under Rule 59. And the trial court said, and I think you could look at it for the same thing, it's clear error of law. And I think that's really what this would fit. If you all decided that the Supreme Court holding is that we have to send a waiver to the arbitrator, that would be clear error of law by the trial court. It was appropriate for us to bring it then in the motion to reconsider. That was the only — You said you didn't present it to the trial court on the initial motion. Yes, Your Honor. And I'll — Yes, you didn't present it. You're correct. We did not present it because I really wasn't aware. I never even thought of that argument until after we looked at it. If you waived waiver or if the law is murky and we're going to get to the merits, to understand your argument, are you saying the courts didn't happen to be invoked here, the DA didn't seek a subpoena for this? Yes. Or are you saying that the DA could never be your alter ego, even if they had invoked the courts, you can't be said to have been their alter ego? Which of the two is it? Can I answer something before I get to that? Because you said waiver of waiver. Well, I'm just trying to move off because you only have four minutes left. I only want to be very clear that the only issue that might have been waived was this question of who decides waiver. I agree 100 percent. So to answer your question, I actually don't know the answer. My position would be I think that actions of the prosecutors can never be attributable to the complaining party. That would be my position. But here it's unnecessary to answer it. That's what CASHBiz, you would think that's what that stands for, because claims were acted, criminal actions were filed. Right. But the Court didn't say never, ever. No, it didn't say never, ever. But there you have the worst facts in here, that suits were brought and the borrowers had to go in and defend those suits. And in that case, the CASHBiz case says there's no waiver. But here, where all you did was file a criminal complaint, there's no dispute about that fact, the only thing that happened was we filed a criminal complaint, a demand letter was sent, the response was the borrowers paid the monies to the prosecutor, owed the PLS, plus fines of $185. None of that's in dispute. We would say here, number one, it's not attributable to us, but number two, even if it was attributable to us, it doesn't matter, because there's no act in court. And there — So the restitution payments never went through the court funds? No. It went directly to the prosecutor. And then they — And I presume — I don't literally know this. This is not in the record, but I do presume the prosecutors paid PLS the money. Interesting. But nothing went through the courts. There was no action ever anywhere. And that's one point that I want to make on — Is there some rule, black letter law rule, that for there to be, quote, litigation, close quote, it has to be in court? Well, if you look at the subway leasing case, it actually uses — it says an overt act in court. When it's discussing in more detail this question of substantially invoking litigation, one of the ways it expressed that test is it says you have to have an overt act in court that evinces an intent to litigate a claim that you're now seeking to arbitrate. Here — Isn't that why cash bids is different? Isn't that at least in part the basis for the decision in cash bids, that there was no evidence of a desire to achieve repayment of the loans through the criminal process? Yes, I will — I do think we need to make it — I need to make even a distinction here of how we're even farther different than cash bids is. Because — and this is really important, and I don't think the trial court really picked up on this. What the trial court talks about, an action that would be litigated, involves this fact issue of the debt between PLS and the borrowers, OK? And it says if you had a criminal action, that might be issue preclusion on a civil action over that debt. The claims in this case have nothing to do with indebtedness. They're not dependent on it. They're totally independent of it. The claims here are for malicious prosecution, DTPA violations, finance act violations and fraud that all stem from the actual act of submitting the criminal complaint to the prosecutor, which they allege is wrongful. And that can be decided in arbitration. Those claims have nothing to do with the debt issue. They're totally independent of it. So even if there was some — Yes, but it doesn't actually matter. If we had submitted the claims for any other reason, the reason is irrelevant, because what is actually the alleged wrongful act is the submission of the claim. We could have done it for any number of reasons. It is independent. That may have been the actual reason. There is some evidence that may not have been the reason. But it's independent of why we submitted it. It's simply the allegation is that we wrongfully submitted. So those claims are different than the claim about the debt. And because of that, no matter what those overt acts — I mean, there was no overt act in court, but even if there had been, it doesn't relate to the specific claims that Applees are bringing. In fact, ironically, what's interesting is the claims that Applee was bringing — I mean, the claims that Applee — they stem from the act that they're claiming caused the waiver. It didn't cause the waiver. It gave rise to their claims. My time is up. Yes. May it please the Court, my name is Daniel Duco. I represent Lucinda Vine and Christy Pond. In my time before the Court, I'd like to address two issues. One is whether or not the claims at all fall within the scope of the arbitration clause. And two, if they do, whether or not PLS substantially invoked the judicial process and waived its right to arbitration. The first threshold issue that must be addressed when you look at an arbitration clause is whether or not the claims fall within the scope of the arbitration. If you look at the complaint that we filed, you will see we didn't allege breach of contract. We didn't allege anything related to the contract. Our claims are solely related to PLS going to the criminal courts to try to enforce a civil debt. Now, PLS has spent a lot of time trying to argue the claims are non-arbitrable. The claims are non-arbitrable. Well, if the claims are not arbitrable, our claims that are based on those claims solely are clearly not arbitrable either. We filed a lawsuit based on malicious prosecution. We filed a lawsuit based on the fraud that PLS filled out an application. Sorry. There were a few things you said that are — the district court did make a finding that these claims would be covered. Yes. And you haven't cross-appealed that. So if you lose on the waiver, these claims would then be covered, that there's nothing for the district court to revisit. Well, respectfully, Your Honor, when we looked at the issue, the issue was we're seeking to just defend the judgment. I mean, as the Seventh Court pointed out, filing cross-appeals after cross-appeals just wastes the court's time. All we're asking the court to do is to defend the judgment on alternate grounds. And the U.S. Supreme Court has said we have the right to do that. Further, Your Honor, it's in rebuttal to their arguments of non-arbitrable claims. They have the right, they believe, to brief that issue over and over. These claims aren't arbitrable. Well, if they're not, and our claims are based on them, then we should be allowed to argue. Well, I'm just — let me rephrase my question, then. If you — if we conclude that subway equipment — is that what it's called? Yes. The district court misapplied that, and therefore the waiver by litigation doesn't apply to these facts. What would the relief be? If you found that the claims don't fall within the arbitration provision, the relief —  If I — if we find that subway equipment doesn't apply, that the courts weren't theories as to whether — what would then the relief be? Then the relief would be presumably send it back to the arbitrator, so the arbitrator — Send it back to the arbitrator, even as to Vine — No, not as to Vine, absolutely not, because there is no evidence that Vine ever agreed to an arbitration. Right, okay. Go ahead. That would only be as to Pond. Okay. They have not met their burden at all, and as the district court pointed out, the district court didn't even decide whether or not Vine agreed to the arbitration provision, signed it, agreed to it. So that would only apply as to Pond. Okay. They have not met their burden to prove Vine at all. Okay. And so the question then becomes whether they are arbitrable at all. We argue they are not. They don't fall within that scope. But if they do, the next question becomes whether or not that substantially invoked the judicial process. And as the Court is aware, the standard is whether or not they sought to achieve a satisfactory result. Their own arbitration provision, the arbitration provision that they had my client sign, says arbitration applies to all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us. That is their arbitration provision. So according to their contract, if they were going to seek any money against us in any way, they had to first go to the arbitrator. And they didn't do that. Instead, they went to the criminal courts. And the question is, that they refused to answer, is why did they go to the criminal courts? Well, if you look under the contract, in order to go to arbitration, they would have to pay an arbitrator, they would have to pay a lawyer, they would have to pay an arbitration fee to my clients for $1,000, and they would have to go through the arbitration process. Why are we wondering why a victim of a crime, no victim of a crime can waive away their right to report a crime to the DA? They're not a victim of crime, Your Honor. Well, you claim they are, but they say they are a worthless check. Well, as the record sits here today, when you look at my pleadings, which is what the facts the Court has to consider, they are not victims of crime. There is no evidence to the contrary. And I will represent to you, once the pleadings and the discovery bears out, it would also show they were not victims of crimes. But as we sit here today, when you look at all the evidence that this Court can consider, that is my complaint, they are not victims of crimes at all. So they submitted those not because they were victims of crime, not because my clients committed a crime, they submitted those solely to avoid the arbitration costs, to avoid the fees and the fines, solely to achieve a satisfactory result and try to recover their money. Is that alleged in your complaint? Yes, Your Honor. So, what they did was they avoided their arbitration clause, they went to the criminal courts, and they said this is free. But you say they, you keep saying they went to the criminal courts. But when I look at subway equipment, written by Judge Jolly, especially I think it's footnote three, he said the courts aren't sort of a ghost. You have to invoke, you have to implement judicial process. So, I still am in the frame of this is a victim reporting to the DA a crime, and unless you see some use of the courts, then the judicial branch hasn't been employed. Right. And I understand that mindset, Your Honor, because that is the mindset of a typical criminal case, a typical assault, a typical crime in which the victim goes to the DA and reports the crime. This is a bad choice. Actually, more often than not, the victim reports it to the police. Isn't that what happened? Yes, Your Honor. Exactly. But this is a different matter. This is a bad check case. This is a case in which the DA takes absolutely no action unless the business owner swears out an affidavit saying a crime has been committed and submits the evidence, and based solely on that evidence, then the district attorney goes through the process of sending out a demand saying you are going to go to jail unless you pay this and you pay the fines. And then the next step is go to court. There's no arraignment proceedings. But that step never happened. Because they paid. Okay. And so they achieved their satisfactory result. It doesn't mean that they weren't in that process. But what case stands for the in the process rather than actually invoking the court? This is a very narrow waiver. Your Honor, I understand. But the Subway case says a specific action. It doesn't have to be an action. In Subway, they denied the motion. Absolutely, Your Honor. But they did set forth the standard, which is a specific act. But then the two Texas cases that seem to be in play, the tragic Deborah Slough murder case, Krista Spahn and Cash Viz, those both have months and months of judicial process and mechanism invoked. Your Honor, the Krista Spahn has a very long process. Yeah. But Cash Viz had none. Yes, Your Honor. And this case would seem to have none. Yes, Your Honor. However, I will tell you that as the lawyer handling the Cash Viz case, the Texas Supreme Court has asked for full briefing on that case. And that full briefing, our briefs are due the 20th of this month, which not being well versed too much in appellate work, I believe that three justices have to believe that our case is valid. And then if we can convince one more, they take it up for review. So while they want to rely, PLS wants to rely on Cash Viz, at least the Texas Supreme Court has recognized that it is not a good decision. And if you read the decision, you'll see that not only do they ignore the FAA, they, unlike in this case, the Cash Viz case, there are some factual distinctions. As the Court pointed out, in that case, there was no proof that they tried to get paid and that was the hurdle that the Court of Appeals had. In this case, we don't have that. In this case, we have proof that they wanted to get paid and they did get paid. And they achieved their satisfactory result. When we analyze these cases, we look at them, all of us look at them in the mind frame of a case, a civil case. You have some written discovery, you have some depositions, you have some motions and hearings, and at some point, one of the parties says, I want to take this case to arbitration. And so the courts look, have you gone too far? That's not our case. We can't put this case into that box. Our case is a much shorter case. It's a criminal case in which they reclassify civil debt in a criminal case that in essence involves four things. You file the affidavit claiming that it's a bad check. You submit the misdemeanor evidence, the bad check, the information on the client. The DA then sends a letter saying you're going to jail if you don't pay. And then if you do pay, that goes, that stops. But if you don't pay, you go to court. That's it. So when you look at it that way, they have enacted three out of the four process that would be in place. But my reasoning behind this very narrow waiver is it's sort of an estoppel concept. If PLS wants to go to court to resolve this, they can't turn around and say, no, we'd rather be in the arbitrator. But I still don't see how they ever went to court. First of all, it's not them. The district attorney is not an alter ego of a victim. And second of all, even if that concept could occur, this district attorney never invoked the courts. And we have subway equipment that makes it clear that invocation isn't sort of a process or a strategy. It's an implementation. I would disagree respectfully because there is only one way to invoke a court in a bad check case. There's only one way. You go through that process. You file that. They were going through that process. It wasn't like they said or there's some evidence that at some time they were going to stop before it got to the courtroom. They were going to court. Tell us again or summarize again what does the complaint say about from the time the demand letter was received through the payment of the debt? From the time the demand letter was received through the payment. Late on your installment. If you don't pay us, we're filing a bad check claim. Walk us through. We don't have a copy of the complaint in the file in the record excerpts, and I didn't have it in my file here. So walk us through that. Yes, Your Honor, and I will make sure that the court gets a copy of the complaint. We have it. We can get a copy. Okay. But the complaint is very detailed, Your Honor. I will let you know that I work with a group called Texas Appleseed who conducted a very long investigation into this, and Texas Appleseed laid out the facts for me. But it's very detailed. From that point, not only does PLS then. Just tell us what you allege, please. Yes. What I alleged is that. Don't tell us how you work for Appleseed. No, just tell us what you allege. Yes, Your Honor. What I alleged is that PLS filed the criminal complaint with the district attorney's office, then PLS subsequently to that, they went to the borrowers and said, we're going to put you in jail. And the district attorney then sends a letter saying, we're going to put you in jail. And at that point, my clients paid. That's what we allege in the complaint, Your Honor. And so that is what happened. They achieved the result that they were after, which was to achieve repayment of the loan that they wanted to, that the borrowers owed them, and they used the criminal justice system to achieve that. That was the complaint, Your Honor. And so the question then becomes, why, after they ignore that, did they substantially invoke the judicial process? And the law says that if you try to achieve a satisfactory result, I mean, I know that there are cases in which this is a very novel issue. There are a lot of cases on this. CashBiz is on point because it's a case filed by me for the same claims. But Krista Spahn points to the fact that you can invoke the judicial process by going to the criminal courts to try to achieve a result in your civil case. And there's also a case called Principal Investments v. Harrison in which the Nevada Supreme Court relies on the FAA, applies federal law, and in that case, the payday loan companies, its payday loans, weren't being repaid, so they went to a separate justice court, and they filed fraudulent default judgments based on affidavits that were false. So the borrower basically didn't know that it was happening. They took the default judgment against them. Then they went and tried to garnish their wages based on the judgment. They filed a – the borrowers filed a class-action lawsuit, and they said, we invoke the arbitration clause. Well, it went all the way up to the Supreme Court of Nevada, and Nevada said, no, you tried to achieve a satisfactory result in that other court. And that other court was basically two steps. You file the complaint, you file the default judgment, and you have a judgment. And so that case is more analogous to any of the cases relying on the civil law and looking at how long the civil process goes on. That case is almost directly on point because they went to a JP court, they got these judgments, and then they tried to use those judgments against the borrowers. So that case, the court found that they did substantially invoke the judicial process, and they did waive. So one final point is that many of the arguments briefed by PLS are arguments that they first brought up in their motion to reconsider. These are arguments they could have brought up in their initial motion to compel. They could have brought up in their reply. These are arguments that they waived. And in response to that, in their reply brief, they cited the Euler v. Allen brand case, which is dicta involving a petition for writ of habeas corpus, in which they allowed consideration of the evidence in the motion to reconsider. We asked this court to ignore that evidence. I mean, ignore those arguments. Those arguments were waived by PLS. They could have made those arguments in their reply. All the arguments that I made in this brief, all the arguments that we made in all our briefing, are the same arguments we made in response to the motion to compel. And so those arguments could have been made in their reply. They ignored that. They attached new evidence, new affidavits. That evidence should not be before this court. Those arguments should not be before this court. The question is only whether the claims fall within the scope and only whether the claims substantially invoke the judicial process. And the final issue that is brought up is prejudice. And PLS continues to argue that my clients were not prejudiced because it had nothing to do with this case. But we all know that the first thing that would be asked in a deposition of my clients, the first thing that would be asked in cross-examination is, did you commit check fraud? They would say, no, we didn't commit check fraud. And they would say, why did you pay the fines and the fees of the district attorney? And so they would use that against my clients, which is directly what prejudice is. Setting aside all the issues of prejudice, the fact that they faced criminal charges, they got letters from the district attorney, they had to pay extra fines and fees, that is the prejudice that is in front of my clients as we move forward on this case. And so I guess I could give time back to the Court if you want to share that. Before you give time back, are you distinguishing Cass biz or are you saying we shouldn't follow it because it's being looked at closely? How do you harmonize your argument with Cass biz's reasoning? Two points, Your Honor. First, I'm distinguishing it on the point that the justices in Cass biz had a hangup in which they couldn't prove based on the record that the Cass biz tried to achieve a satisfactory result because they weren't paid back. Those claims were dropped against the clients because my clients fought them. They went to court. And so the justices in Cass biz said, well, it evidences a desire of malice and meanness, but there is no evidence that they tried to achieve a satisfactory result. In this case, we don't have that. In this case, we have evidence that they tried to achieve a satisfactory result because they did. And they used the criminal justice system to get that result, and they got paid back completely. So I distinguish it on that ground. But I also ask the courts to look at the fact that the Texas Supreme Court is asking for full briefing on this case, on that case, on Cass biz. And so obviously they are going to make a determination as to what happened. And one of the issues that we raised in that case was the failure of the Court of Appeals to apply the FAA as they were supposed to. They applied in proper standards. And so when you look at the fact that they are going to look to the FAA and federal law, I imagine at some point they're going to look to this court as to what this court's determination is to make their determination or vice versa. And I'm not sure. Okay. Anything else, Your Honors? Thank you, counsel. Rebuttal. I don't want to take that. Your Honor, let me address the several points, first being this issue of what happened or what the effect of filing a criminal complaint with a prosecutor and then the prosecutor sends a demand letter and the response to that was payment. That is the closest analogy, and I think it's a fairly decent analogy, because if you were to attribute the acts of the prosecutor to PLS, then in essence what you have is a demand letter was sent. And the courts have said in civil cases if a party sends a demand letter, that does not constitute waiver. And if, for example — Didn't you file a bad check claim with the prosecutor? Yes, but not in court. There is a distinction. Counsel, let's see if we can agree on something. The average citizen, if they have a complaint, if they're a victim of a crime, they don't march down to the office of the U.S. attorney, to the office of their local district attorney. Isn't that right? No, Your Honor. This is a little bit more of a sophisticated business. That's true. In your average crime victim, they go to the district attorney's office. Yes, but I do represent clients. And then they prepare an affidavit. Isn't that right? Did PLS? Uh-huh. Yes, the DA gives them a form. And the expectation is not that the district attorney is going to have a little chat with these people. That's not what this is about, is it? I mean, it's about they want to collect repayment on a loan. Let me answer that very directly, because I want to be clear. Well, because the question is whether or not you're invoking the judicial process. Right. And all I'm suggesting is that someone's sophisticated enough to go to the office of the district. The average citizen walking around on the street doesn't know where the district attorney's office is. Most of them know where the police department is. But your client goes to the office of the district attorney, and they complete affidavits against people. And with the expectation that the district attorney is going to use the judicial process, you're telling me they don't expect that that's what's going to happen? Let me address that, Your Honor, because I want to be candid with you about it. I think that's a very distinct possibility. But I do have to—I think it's a very distinct possibility. I don't want to be disingenuous with the court about that at all, that that could be the very reason for doing it. The reason I want to draw a distinction here, though, is because it's in the record. It is actually PLS's policy not to submit these affidavits to district attorneys. We are not proud of what happened here. This is against company policy. What do you mean it's in the record? There's a declaration submitted with a motion to reconsider where the two employees did this, and they're not there anymore. We can't find them. Generally, on a motion to reconsider, it's way too late to present evidence that you knew about. Right. I'm just trying to answer the question, though. And when you look at the affidavit that's filed, it's a form affidavit, and it says both. And please point this out in the brief. It says these are not—these are postdated checks, and then in a paragraph they swear that they are. They are not postdated checks. They're saying both in the same form. The reason I think that's possible is because I don't think these employees understood what they were doing. And to give you the different scenario, what actually happens— They didn't understand what they were doing. They stumbled into the district attorney. No, no, no, no. Here's what happens, and I want to make this distinction. District attorney or county attorneys who have hot check policies, they do this as a business, and it's actually a money-making industry for the— De-generating. Exactly. They have bad check units set up in all DA's offices. And they actually go out to businesses and solicit this work. I'm going outside the record, but you asked the question, and I think it's entirely possible the DA's went out or the county attorney— it's different in Texas about which office it might be, but whichever— they go out and solicit these from businesses. And I'm not going to tell you it's impossible that these two employees did this intending to get repaid, but because of the company policy, I think it's at least possible they were actually solicited by the county attorney or district attorney. You know, Paso would be the county attorney, but anyway. And then they filled out the forms, and the fact that they honestly filled them out, one place saying—they actually check a box. This is a post-dated check, which would not fit. And then in the statement, this big long paragraph that they signed, it's all a form thing. They say it is not a post-dated check. And I just think that on the basis of what's in the record here, it is not entirely clear, but I do not want to be disingenuous with you and say it's not possible that that was the purpose. I do want to be clear with the court about that. P.S., we are not proud of what happened in this case. This is not our policy, and it's part of the reason that I want to tell the court we do not—we are not in the basket of apples with a lot of other payday lenders. We try to be different. So I do think this— The time has expired, counsel. Thank you, Your Honor. I appreciate it. Thank you very much.